IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| KEVIN RASHAWN WRIGHT | § | |
| v. | § | CIVIL ACTION NO. 9:11cv204 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT</u>

The Petitioner Kevin Wright, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Wright was convicted of the offense of murder, for which he received punishment of 50 years in prison. The facts of the case, in brief, show that Wright received a call from his sister Angela, who told him that she and her boyfriend Clayton "Junior Boy" Jones had an argument and he physically assaulted her . Angela lived in Livingston, Texas, while Wright lived in Houston.

Wright was planning to go to Livingston that day, and he met up with an acquaintance named Jackie Welch on his way back from the store. Wright told Welch about the fight between Angela and Jones, and said that he was going to "the country" to see his mother in Livingston. Welch asked to go along because he wanted to go to the country to shoot his pistol.

Angela came to Houston and picked up Wright and Welch. She showed Wright her bruises and a bite mark. They went to Wright's mother's house and Welch and Wright then drove to a part of town called the "West End." Welch asked what Wright was doing, and Wright said that he

1

wanted to find Junior Boy and "have words" or "knock out a tooth or two." They saw Jones while driving, but he was with a group of people so they did not stop.

Instead, Wright and Welch went to Wright's grandfather's house, where they shot Welch's gun into the woods. At one point, they ran out of bullets and had to go to Wal-Mart to get more, but they were unable to secure any because they had no identification. Wright called his cousin Reginald, who came to Wal-Mart to purchase the bullets. Welch also shot his gun in the back yard of Wright's mother's house.

Later that day, Wright, Welch, Angela, Reginald, and some children were outside of Wright's mother's house. Jones drove up and began arguing with Angela. As Jones left, he threatened to come back and "set it off." Wright started to follow Jones off the porch, and Welch and Jones began exchanging words. Welch then shot Jones several times.

At 4:45 a.m. the next morning, a Polk County patrolman was dispatched to the area in response to a report of "a drunk guy in a ditch." He could not find anyone so he located the address of the complainant. There, he found Angela and asked her where the intoxicated person was, and she told him. The patrolman found Jones' body in the ditch. An investigation of the scene turned up nine shell casings from a 9mm gun off to the side of the porch. Seven gunshot wounds were identified in Jones' body.

Wright was convicted of murder as a party to the offense. He and Welch were tried together, over the objections of counsel. His appeal was affirmed by the Ninth Judicial District Court of Appeals. <u>Wright v. State</u>, slip op. no. 09-07-369-CR, 2008 WL 3522363 (Tex.App.-Beaumont, August 13, 2008, pet ref'd). After Wright's petition for discretionary review was denied, he unsuccessfully sought state habeas corpus relief, which was also denied.

In his federal habeas petition, Wright raised 15 grounds for relief, including various grounds alleging ineffective assistance of counsel, prosecutorial misconduct, trial court error, and sufficiency of the evidence. The Respondent was ordered to answer the petition and did so, and Wright filed a response to the answer.

After review of the pleadings and the state court records, the Magistrate Judge issued a lengthy and detailed Report recommending that the application for habeas corpus relief be denied. Wright has filed timely objections to the Report.

Wright first addresses the issue of severance, stating that his attorney, Jennie Roberts, was ineffective for failing to file a motion for severance of his case from Welch's. The Magistrate Judge observed that Roberts had objected to the State's motion to consolidate the cases and that there was no indication that such a motion would be needed prior to the State's motion to consolidate; in light of the fact that the trial court granted the motion to consolidate over the objections of both Roberts and Craig Washington, Welch's attorney, the Magistrate Judge stated that Wright failed to show that a motion to sever would have had a reasonable likelihood of success, or that the failure to file such a motion, after the trial court had consolidated the cases, amounted to ineffective assistance. The Magistrate Judge also noted that contrary to Wright's contention, Roberts' defense of him did not rest on Welch's self-defense claim.

In his objections, Wright argues that Roberts was "unprepared" for evidence to be admitted in the joint trial because evidence was admitted which would have been inadmissible had he been tried by himself. He insists that Roberts believed that she would have to abandon her duty to him and serve as an "unofficial prosecutor" against Welch, and points out that he received a longer sentence than did Welch, the actual shooter. Wright says that "the issue here is not whether Roberts would have prevailed had she filed the motion but whether Wright was denied a fair trial by her failure to do so."

These objections are without merit. In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced him to the point that he was denied a fair trial. <u>Strickland v. Washington</u>, 466 U.S. 668, 678 (1984). This means that the habeas petitioner must establish both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable

and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. Del Toro v. Quarterman, 498 F.3d 486, 490 (5th Cir. 2007).

As the Magistrate Judge stated, there was no reason to file a motion to sever until the cases were joined, and the cases were joined after the State made a motion, to which Roberts objected. While it is true that Roberts could have made a *pro forma* motion to sever after the trial court granted the State's motion to consolidate, Wright offers nothing to suppose that such a motion had any realistic likelihood of being granted; had the trial court wished the cases to be separate, it had only to deny the State's motion to consolidate. The failure to file the motion for severance, after the trial court granted the motion to consolidate, did not fall below an objective standard of reasonable competence and thus was not constitutionally ineffective assistance of counsel.

In addition, Wright has not shown that had Roberts filed a motion to consolidate, the result of the proceeding would probably have been different. Given the granting of the State's motion to consolidate, the likelihood of a motion to sever being granted, thus undoing the consolidation, was exceedingly small. Thus, the filing of such a motion would most likely not have changed the fact that the trials were held together. Roberts did not have to file a motion to sever in order to preserve error because she objected on the record to the consolidation. Wright has failed to satisfy the requirements of showing ineffective assistance and his objection on this point is without merit.

Second, Wright complains of Roberts' failure to request a continuance. He states that such a continuance, had been granted, would have allowed Roberts to "conduct discovery" to find out what evidence would be offered against Welch, so she would be in a better position to know whether to move for severance. He asserts that Roberts said in an affidavit that she did not know whether or not Welch would testify, and says that "the issue before the Court is whether Roberts should have requested a continuance after the trial court granted the State's motion to consolidate the parties' trials to conduct an investigation to prepare for joint trials with a firm command of the facts and governing law to cause the State's case to survive the adversary testing."

This contention fails to show that Roberts' representation of him fell below an objective standard of reasonable competence or that but for the failure to request a continuance, the result of the proceeding would probably have been different. Even had the trial court granted a continuance, Wright fails to show what information could have been turned up which would have made a difference. Although Wright says that a continuance could have helped Roberts to determine whether or not to move for severance, such a motion had little if any chance of success regardless of whether or not a continuance was granted. This objection is without merit.

Third, Wright complains of Roberts' failure to object to a photograph depicting damage to Jones' body, which Wright argues was offered "solely to inflame the jury." The photograph in question was a large, close-up shot of Jones' bloody heart, which had been removed from his body for purposes of the autopsy. The Magistrate Judge concluded that Wright failed to show that but for the introduction of the photograph, the result of the proceeding would probably have been different, and that Wright also failed to show that the photograph was so prejudicial that an objection would likely have been sustained. Wright does not object to the Magistrate Judge's conclusions to this effect, instead, he complains that the Magistrate Judge cited Roberts' affidavit as saying that the photograph was prejudicial to Welch, the actual shooter, not to Wright. Even were this not the case, Wright has nonetheless failed to show that he received ineffective assistance of counsel.

Wright contends that Terrell v. King, civil action no. 3:08cv244, 2011 WL 33499836 (S.D.Miss., July 8, 2011, *Report adopted at* 2011 WL 3348087 (S.D.Miss., August 2, 2011), cited by the Magistrate Judge, is distinguishable because in that case, which involved admission of photographs of the sexual organ of an 11-year-old rape victim, "the evidence was used to make more persuasive that the child had indeed been involved in sexual activity," whereas in his case, ample evidence showed that Jones had died from several gunshot wounds and the photograph added nothing to the testimony.

In Terrell, the district court concluded that the petitioner failed to demonstrate a reasonable probability that in the absence of the photograph, there would have been a different result at trial.

The district court also observed that the petitioner's defense in that case was that someone else had committed the rape, as opposed to denying that a rape had occurred.

Similarly, the Magistrate Judge said, Wright failed to demonstrate a reasonable probability that in the absence of the photograph, there would have been a different result at trial. Wright's defense, like Terrell's, was not that a crime had not been committed, but that someone else had done it. The jury was aware that a killing had taken place and that Welch was the triggerman; thus, the autopsy photograph displayed the result of Welch's actions, not those of Wright. Furthermore, Wright has not shown that the photograph was so inflammatory that but for its admission, different result would have been reached. *See* Williams v. State, 958 S.W.2d 186, 195 (Tex.Crim.App. 1997) (relevant photographs are admissible if they aid the jury in determining such matters as the manner and means of death, the force used, and length of time the victim has been dead); Young v. State, 283 S.W.3d 854, 874 (Tex.Crim.App.), *cert. denied*, 130 U.S. 1015 (2009) (admissibility of a photograph is within the discretion of the trial court and will be disturbed on appeal only when it falls outside the zone of reasonable disagreement). Wright's objection on this point is without merit.

Next, Wright complains that counsel failed to object to a number of allegedly improper statements made in closing argument by the prosecutor. These statements were set out by the Magistrate Judge in the Report and will not be repeated here unless necessary. The Magistrate Judge stated that in order to prevail, Wright must show that had the desired objections been lodged, the result of the proceeding would probably have been different. Of the arguments listed by Wright, the Magistrate Judge concluded that the first five were reasonable deductions from the evidence, the sixth had been objected to by Washington and the jurors instructed to disregard, and the seventh and eighth were deductions from the evidence.

The ninth argument was objected to by Washington, and the objection was overruled; in addition, the Magistrate Judge said, this argument was a plea for law enforcement and thus proper. The tenth argument specifically concerned Welch, to the effect that if he got away with the killing, Welch would be the "big man in Houston," and so the Magistrate Judge questioned whether Roberts

6

could have objected to it; even assuming she could have, Wright did not show that the argument was objectionable.

The Magistrate Judge stated that the eleventh argument was a plea for law enforcement, Wright had failed to show that an objection to the prosecutor's comments concerning Angela would have made any difference, and that the final objection was a deduction from the evidence.

In his objections, Wright says that the first five arguments are an "improper summation of the evidence because they represented "evidence outside the record." These arguments were set out by the Magistrate Judge, who concluded that no valid basis existed for objections. Wright has not shown that these arguments were susceptible to objection as being outside the record or on any other basis.

While Wright concedes that Washington objected to argument no. 6, he states that this did not preserve error for him. Whether or not this is correct, he does not address the fact that Washington's objection was sustained and the jury was instructed to disregard the comment. As the Magistrate Judge stated, the jurors are presumed the follow their instructions. Woodfox v. Cain, 609 F.3d 774, 805-06 (5th Cir. 2010). An objection by Roberts, securing the same instruction to disregard, would have been superfluous, in that the jury had already been told to disregard the statement. While an objection by Roberts might have preserved error for appeal, Wright does not show that the statement amounted to reversible error had it been raised on appeal. This objection is without merit,.

Wright complains that the seventh argument was not a "deduction from the evidence," apparently on the theory that according to Wright, nothing in the record supports it. The prosecutor was arguing his theory that Wright and Welch collaborated in the killing of Welch. This theory had sufficient support in the record to render it proper under Texas law. Similarly, the prosecutor's eighth argument was a deduction from the evidence, albeit a negative deduction in that it relied on the facts that Junior Boy was shot in the yard but found in the ditch and the Tahoe was never located.

Because the statement was thus not objectionable, Wright has failed to show error in the fact that Roberts did not object to it.

In argument no. 9, Wright again states that Washington's objections did not preserve error for him. He asserts that Roberts should have objected as well, but fails to show that had she objected, a meritorious ground for appeal would have been preserved. Concerning argument no. 10, Wright complains that there was no evidence to show that he was gang-related or that he was a party to the murder, but as the Magistrate Judge concluded, this argument was a plea for law enforcement and a deduction from the evidence, meaning that Roberts could not have lodged a valid objection. As the Magistrate Judge observed, Washington did object to this argument and was overruled, and Wright offered nothing to show that an objection by Roberts would have fared any better.

Argument no. 11 was a contention by the prosecutor that people don't test positive for marijuana based on second-hand smoke, a reference to the fact that Wright had his bond revoked after testing positive for marijuana. While Wright says that if the prosecutor's statement is true, people should be immune from cancer from the smoke of others, but the Magistrate Judge correctly concluded that an objection by Roberts based on this point would plainly have been futile.

In argument no. 12, Wright cites a Texas case holding that it was error for a prosecutor to state "do you honestly think [another judge, who would oversee probation] wants [the defendant] on probation?" *See* Harris v. State, 56 S.W.3d 52 (Tex.App-Houston [14th Dist. 2001). The appellate court concluded that this argument was reversible error because it conveyed to the jury the supposed preference for punishment of the judge who would ultimately impose probation. In the present case, the prosecutor told the jury that it would "hurt his feelings" if they imposed probation. As the Magistrate Judge explained, Texas law prohibits a prosecutor from giving his opinion about a case *and* basing this opinion on the prosecutor's supposed "special expertise." Johnson v. State, 698 S.W.2d 154, 157 (Tex.Crim.App. 1985). Thus, an argument to the effect that "I don't think probation is appropriate and I don't think you think that probation is appropriate" is not improper.

In this case, the prosecutor's reference to "hurting his feelings" did not imply any special expertise and thus was not objectionable, even if possibly ill-chosen.

In his last objection to the prosecutor's arguments, Wright says that the prosecutor commented on his failure to testify, in that he said that "you saw the way [Wright] acted on those tapes of his [i.e. tapes of police interviews]. I mean, he knew for some reason - *and we're not to know* - that he could get Jackie to do that [i.e. be a shooter]." The Magistrate Judge determined that this comment was not of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. The Magistrate Judge cited numerous cases in which prosecutorial remarks were held not improper, including such remarks as "He [the defendant] knows. He knows where the witness is as he sits there right now. He knows. He knows," and "only one person does know [the source of handwriting on a matchbook] and that's [the defendant]," were not improper comments on the defendant's failure to testify.

In his objections, Wright argues that this was not an implied or indirect allusion, but that the comment was meant to draw the jury's attention that they are "not to know" that Wright encouraged Welch into committing the murder. As the Magistrate Judge stated, however, this comment was not of such a character that the jury would necessarily and naturally take it as a comment on Wright's failure to testify. In addition, the remark took place at the punishment phase, and the alleged misconduct was very brief and the evidence was more than adequate to support the punishment assessed without regard to the alleged misconduct Wright's objections on this point are without merit.

Turning to the issue of prosecutorial misconduct, Wright argues that there was no evidence to support a number of arguments made by the prosecutor, including that Jones had a "right" to assault Angela because she chose to live in Junior Boy's lifestyle, that Wright gave a signal to Welch for the shooting, that Wright put Jones' body in the Tahoe and drove around for a while, and that the Tahoe disappeared because it had blood in it. As the Magistrate Judge stated, claims of prosecutorial misconduct based on jury argument require a showing that the prosecutor's remarks "must infect the

trial with such unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168. 181 (1986). The Supreme Court explained that the prosecutor's remarks must be more than "undesirable" or even "universally condemnable" before reversal is warranted, but must instead rise to the level of a due process violation.

Wright fails to make such a showing concerning any of the remarks which he identified, despite the fact that some of these remarks were based solely upon inference. Although he says that the prosecutor "argued "for the death penalty," in fact the prosecutor did not argue for the death penalty, but stated that it was ironic that Wright and Welch could not receive the death penalty. The Magistrate Judge concluded, citing DeBolt v. State, 604 S.W.2d 164, 170 (Tex.Crim.App, 1980), that this argument did not rise to the level of a denial of due process, and Wright fails to demonstrate that this conclusion was incorrect. His objection on this point is without merit.

Next, Wright complains of counsel's failure to object to the admission of Welch's videotaped statement, arguing that the statement violated the Confrontation Clause. The Respondent argued in his answer that Welch's statement was beneficial to Wright; although Wright disputes this characterization, the Magistrate Judge concluded that it was reasonable trial strategy to allow the statement to come in. The prosecutor told the jury to "notice that virtually every statement that he [Welch] makes where we know what the truth is, he told a lie." The prosecutor identified Welch's statement on the tape that the gun belonged to Wright as being one of these lies, which let the jury know that the gun belonged to Welch.

Thus, the Magistrate Judge said, the videotape coming into evidence showed the jury that the known triggerman, Welch, was also a liar. Wright's theory of the case was that he had nothing to do with the shooting, but that it was entirely done by Welch. A portrayal of Welch as a person of bad character, a shooter and liar, would lend credence to this story, and help make it possible for the jury to convict Welch but acquit Wright. In his objections, Wright argues that "the jurors might not believe Welch's statement regarding the gun, Welch, nonetheless, injected a believability that Wright did have something to do with the offense by mere implementation [sic]." However, with Welch

exposed as a liar, any statements which he made implicating Wright could be discredited by the jury on that basis. Wright has failed to overcome the presumption that Roberts exercised sound trial strategy by allowing Welch's statement into evidence when this statement had the primary effect of discrediting Welch.

Wright argues that it was "unreasonable" for the Magistrate Judge to believe that the jurors did not consider the comments Welch made against Wright after the prosecutor labeled Wright as the driving force behind the crime. He states that the prosecutor told the jurors that they could use Welch's statement against Wright. This is not entirely accurate; the prosecutor did not directly tell the jurors that they could use Welch's statement against Wright, although he did argue that a statement by Welch contradicted Wright's second statement. In this regard, Wright has not overcome the presumption that jurors follow the instructions which they are given. The trial court specifically instructed the jury that the statements given by each defendant could only be used against that defendant. Nor did Wright show that the prosecutor's remark to this effect so infected the trial with unfairness as to make his conviction a denial of due process. Wright's objection on this point is without merit.

With regard to the jury instructions, Wright complains that "the trial judge instructed the jury to acquit or convict Wright based on their verdict regarding Welch's self-defense claim, and Roberts failed to object to the instruction." As the Magistrate Judge said, this is not a correct reading of the jury instructions. The self-defense instruction told the jury to acquit Wright if they found that Welch was acting in self-defense, and to find against Wright on the issue of self-defense (i.e. not acquit him on that basis) if they found that Welch was not acting in self-defense. The Magistrate Judge explained as follows:

> In order to convict Wright, it was not sufficient that the jury find that Welch was not acting in self-defense; instead, the jury had to find that Wright, himself, was criminally responsible for Jones' death, as a party, by encouraging, soliciting, or aiding Welch.
>
> The charge permitted the jury to find against Welch on the issue of self-defense and convict him of murder, while simultaneously acquitting Wright on a finding that he

was not criminally responsible for Jones' death. Wright has failed to identify any legal basis upon which Roberts could have objected to the charge.

Wright's objections to the Magistrate Judge's Report are based upon his flawed and inaccurate reading of the jury charge. He says that "the jury charge against Welch decided Wright's fate" but this is incorrect; the jury charge permitted the jury to acquit Wright if they found that Welch was acting in self-defense, but not to convict Wright if they found that Welch was not acting in self-defense. This objection is without merit.

Wright also complains that the Court "cannot speculate" whether or not the jury followed the instruction that a party's statement could be used only against that party. As the Magistrate Judge explained, jurors are presumed to follow their instructions. Woodfox, 609 F.3d at 805-06. Wright has failed to overcome this presumption. His objection on this point is without merit.

Next, Wright asserts that the evidence was insufficient to support the conviction. He sets out his version of the events and says that after he stepped off the porch to engage Jones in a fist fight, "out of nowhere, Welch appeared and shot Junior Boy [Jones] multiple times." He argues that the State offered no evidence of a common scheme and says that acts done after the offense was complete do not make an accused a party to an offense.

The Magistrate Judge concluded that while the evidence was circumstantial, it supported a finding of guilt beyond a reasonable doubt when viewed in the light most favorable to the verdict. This conclusion was also reached by the state court in Wright's direct appeal, with the court explaining as follows:

> The jury heard appellant admit that he went looking for Jones in the 'West End' and that he wanted to hurt Jones for assaulting his sister. Appellant stated he knew Welch was going to bring a gun. They both test-fired the gun the day of the shooting. When the argument on the porch began, Welch moved to the backseat of the vehicle. The jury could have reasonably believed that appellant knew that Welch was going to shoot Jones.
>
> On this record, the jury could have reasonably believed that appellant, either by words or agreement, encouraged Welch in murdering Jones and was a participant in the crime. The evidence is legally and factually sufficient to support the jury's verdict.

Wright v. State, 2008 WL 3522363 at *3.

  Under the Anti-Terrorism and Effective Death Penalty Act of 1996, in reviewing habeas corpus petitions from state prisoners, the federal courts ask if the state court decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002); 28 U.S.C. §2254(d). Although Wright argues from his view of the evidence that finding him guilty requires "speculation," he fails to show that the state court's decision was contrary to or involved an unreasonable application of the law, or amounted to an unreasonable determination of the facts. His objection on this point is without merit.

  Wright states that he will not contest the Magistrate Judge's conclusion on the alleged denial of due process in the state habeas corpus proceeding, and that his specific claims of ineffective assistance were already addressed. Turning to the issue of the alleged comment on his failure to testify, Wright again points to the prosecutor's remark that "we're not to know." He argues that Davis v. Quarterman, 237 Fed.Appx. 903, 2007 WL 1806852 (5th Cir., June 19, 2007) is distinguishable because in that case, an objection was lodged and a curative instruction was given. Wright also argues that the argument in Davis would not be taken naturally and necessarily as a comment on the defendant's failure to testify, even though in that case, the prosecutor stated that "when this man with the teardrop on his eye [the defendant] who sits here silently ... and sits there and watches while ... watches while his attorneys get up here and say, what's going on here? Has the state caused you to tell this lie? No. The physical evidence brings you here." This argument, which involved the prosecutor pointing his finger directly at the defendant while speaking in a loud voice, turning red in the face, and trembling and shaking, was interrupted by an objection, which was sustained, by an instruction to disregard, and by the denial of a mistrial.

The Texas Court of Criminal Appeals assumed *arguendo* that the instruction to disregard did not cure any error, but nonetheless concluded that such error was harmless. The federal habeas corpus also determined that the error was harmless, and the Fifth Circuit affirmed this conclusion.

While it is true that an objection was lodged in <u>Davis</u> and none was made in the present case, Wright has failed to offer any viable objection to the Magistrate Judge's conclusion that the remark in the present case, like the one in <u>Davis</u>, amounted at most to harmless error. He says that the fact that he received a harsher sentence than Welch is "proof" that the remark was prejudicial and that the jurors were probably influenced by it, but he offers nothing beyond supposition in support of this contention. The Magistrate Judge correctly determined that the remark was "at most no more than an implied or indirect allusion to Wright's failure to testify" and that in any event, it was "not of such a character that the jury would necessarily and naturally take it as a comment on Wright's failure to testify." In addition, Wright has not shown that this remark amounted to reversible error even had Roberts preserved error by objecting. Wright's objection on this point is without merit.

On the combined issues of failure to investigate and a conflict of interest, Wright says that Roberts failed to move to have portions of Welch's statement mentioning him redacted and that she did "not add so much as an iota of new fact of evidence that was not offered by the State or in the State's file or matter made know to her by Wright." He does not identify what evidence he believes that Roberts should have discovered or introduced, nor does he show harm in the fact that Wright's statement was not redacted, given the instruction that the jury should consider a party's statement only as against that party. Nor did he identify the portions of Welch's statement which he believes should have been redacted. This objection is without merit.

Wright contended that prior to trial, Roberts said that if the cases were joined together, she would have to go after Welch as an "unofficial prosecutor," but that at trial, she never did so. He argued that this amounted to ineffective assistance and postulated that Roberts had a "conflict of interest" between her duty to Wright and "her friend" Washington, who was Welch's attorney.

14

The Magistrate Judge explained that prior to trial, Roberts stated that she believed that Wright and Welch had antagonistic defenses and so she would have to go after Welch regarding the fact that Welch, not Wright, was the triggerman. Martin, the prosecutor, argued that he did not believe that the defenses were antagonistic because Welch admitted that he was the shooter and Wright's defense was that "I didn't know that he was going to do that." In granting the motion to consolidate the cases, the trial court found in effect that the defenses were not antagonistic.

The Magistrate Judge noted that while Roberts did not "go after" Welch at trial, there was no need for her to do so, inasmuch as all of the evidence showed that Welch was the shooter and this fact was not in dispute. Her defense was based on the contention that Wright had done nothing to promote, solicit, or encourage the shooting, because the jury was well aware that Welch had been the shooter. The Magistrate Judge concluded that even assuming that Roberts' purported relationship with "her friend" Washington could give rise to a conflict of interest claim, Wright failed to show that this alleged conflict gave rise to any adverse effect. He did not point to any plausible alternative defense strategy or tactics which could have been pursued, nor did he explain how Roberts could have "gone after" Welch other than by proving that he was the triggerman, a fact which was uncontested.

In his objections, Wright acknowledges that it was uncontested that Welch was the shooter, but says that Roberts abandoned the "only viable defense as an unofficial prosecutor," asserted that she abandoned this defense "because of her friendship and legal relationship she had with Washington." Aside from the fact that there is no evidence in the record to show that Roberts had any sort of personal or professional relationship with Washington, the Magistrate Judge was correct in concluding that Roberts' assertion that she would have to act as an "unofficial prosecutor" involved proving that Welch was the shooter. This was unnecessary at trial, because that fact was not contested. As a result, Roberts' defense was that Wright had no knowledge of the shooting until the moment it occurred and thus could not be a party. The fact that this defense proved unsuccessful does not render it constitutionally ineffective. Wright's objection on this point is without merit,.

With regard to the issue of cumulative error, Wright says that Roberts "confessed to her own ineffectiveness," which he gleans from a statement which Roberts made in her closing argument during the punishment phase, as follows:

> I'm asking you to do what you feel. You are the fact finders. You have been given this awesome responsibility, this awesome job, and whatever decision you make, we will have to respect and abide by. So we're asking you to do what you think, based on everything you have seen and you have heard, and we thank you for your time.
>
> We thank you for your consideration. And if I have done something to offend anyone, I would like to apologize. And I do take this personally because his life was given - placed in my hands. And it's an awesome responsibility, and I did the best that I knew how to do. If I fell short, which I know I did, I apologize to him and his family, but I still thank you for your time.

The Magistrate Judge stated that "these remarks cannot reasonably be construed as confessing to ineffectiveness." Roberts said that she "fell short" in the sense that she did not achieve the result that Wright and his family wanted, but that this was a long way from a confession that her representation of him was constitutionally ineffective. In an affidavit filed in the state habeas proceeding, Roberts explained that she "always assumes her error" when she fails to achieve the intended result of a not guilty verdict, but that error does not mean ineffectiveness.

Wright contends that Roberts "sat by her more experienced friend in the law and watched in his shadow while he defended his client." He notes that Washington objected on several occasions when Roberts did not, and that as a result, Roberts failed to preserve errors while Washington did. However, Wright does not point to any errors which Roberts should have preserved but did not, which would have made a difference on appeal. He claims that Roberts' statement "[If] I fell short, which I know I did," by itself overcomes his burden of showing ineffectiveness. This contention is patently without merit.

Wright also complains that even though he was not the actual shooter, he received a lengthier sentence than did Welch. The prosecutor's theory of the case, evidently accepted by the jury, was that Wright was "the driving force" behind the commission of the offense, and that Wright "got him [Welch] down here and had him do that." (Reporter's Record, vol. VIII, p. 67). Wright has failed

to show that the fact that he received a longer sentence than Welch is proof that Roberts was ineffective, and his objection on this point is without merit.

Wright also argues that Roberts should have conducted further *voir dire* on jurors 10 and 18 to determine whether they would hold to their verdict if the State failed to prove its case beyond a reasonable doubt, but he fails to show what this would have accomplished or what information would have been elicited. He contends that Roberts should have filed a motion in limine to prevent the prosecutor from referring to him in such terms as "gangland-style executioner," but he fails to show that such a motion had any realistic chance of being granted or that but for this failure, the result of the proceeding would probably have been different. As the Magistrate Judge observed, Texas courts have held that "dramatic epithets may be used against a defendant during closing arguments as proper deductions based on the evidence and nature of the crime." Ponce v. State, 89 S.W.3d 110, 121 (Tex.App.-Corpus Christi 2002, *reh. overruled*); Long v. State, 823 S.W.3d 259, 270 (Tex.Crim.App. 1991); Easley v. State, 454 S.W.3d 758, 759 (Tex.Crim.App. 1970); Belton v. State, 900 S.W.2d 886, 898 (Tex.App-El Paso 1995, pet. ref'd) (reference to defendant as "an animal" was a reasonable deduction from the evidence). Because such arguments are not improper, depending on the evidence, Wright fails to show how a pre-trial motion prohibiting this type of argument could be granted. His objection on this point is without merit.

In his last objection, Wright postulates that had his appellate attorney raised on direct appeal the issues which he, Wright, raised in his state and federal habeas petitions, he would have obtained relief. He states that on appeal, there would be a three-judge panel deciding his case, as opposed to "the magistrate judge R&R [which] is a single opinion that is pro-prosecutor in nature." He says that the state appellate court's job is to correct trial errors, which is not the function of the federal court, and states that the Magistrate Judge "cannot speculate as to what ruling the appellate [court] would have made on Wright's contested claims had his appellate counsel raised them." He says that he presented much stronger claims in his writs than were presented on direct appeal, and so relief should be granted on this claim.

17

In order to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. Sharp v. Puckett, 930 F.2d 450, 453 (5th Cir. 1991); Smith v. Robbins, 528 U.S. 259, 285 (2000). While Wright points to the issues he raised in his state and federal habeas petitions, he makes no showing that but for an unreasonable failure by appellate counsel to raise these issues, he would have prevailed on his appeal. Robbins, 528 U.S. at 285 . As the Magistrate Judge explained, the state courts apply the same standard in determining ineffective assistance of counsel claims as do the federal habeas courts, and Wright has offered nothing to suggest that the state appellate court would arrive at a different conclusion than did the Magistrate Judge regarding his claims of ineffective assistance of counsel. Nor has he shown that any of his other claims would likely have prevailed had they been raised on direct appeal. Wright's objection on this point is without merit.

Finally, Wright argues that he is entitled to the issuance of a certificate of appealability. He specifically identifies the following issues: (1) the uncontested remarks made by the prosecutor injecting outside facts in his closing argument designed to prove elements supporting the law of parties offense, (2) Welch's videotaped statement incriminating Wright in the offense and the prosecutor's reliance on that statement to discredit Wright's statements, (3) commenting on Wright's right to remain silent as an indication of Wright's participation in the offense, and (4) "the numerous errors caused by Roberts' inept performance." The resolution of none of these issues is debatable by jurists of reason, nor is there any showing that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. Wright's request for a certificate of appealability is without merit.

The Court has conducted a careful *de novo* review of the pleadings in the cause, the Report of the Magistrate Judge, and the Petitioner's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 11) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. It is further

ORDERED that the Petitioner Kevin Wright is hereby DENIED a certificate of appealability *sua sponte*. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** on February __17__, 2013.

_____
Ron Clark
United States District Judge